IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

_____

MICHAEL RICHARDSON, #252 317      *

      Plaintiff,      *

        v.      *      1:08-CV-301-MEF
                                 (WO)

C/O LEARY, *et al.*,      *

      Defendants.      *

_____


## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Plaintiff, Michael Richardson, an inmate incarcerated

at the William E. Donaldson Correctional Facility in Bessemer, Alabama, alleges that he was

subjected to excessive force and denied adequate medical care during his incarceration at the

Houston County Jail located in Dothan, Alabama.  Named as defendants are Corrections

Officers John Leary, Adam Chancey, and Fitzgerald, and Sergeant Cindy Buchmann.[1]

Plaintiff seeks damages and requests a jury trial.

In accordance with the  orders of the court, Defendants filed an answer,  special

report, and supporting evidentiary material in response to the allegations contained in the

complaint. The court then informed Plaintiff that Defendants' special report, may, at any

time, be treated as a motion for summary judgment, and the court explained to Plaintiff the

_____

[1] The court previously dismissed Plaintiff's complaint against Corrections Officers Hartley, Poke, and Woods, Sergeant Davis, Sgt. Jones, and "Medical Staff."  (*See Doc. Nos. 4, 12*.)

proper manner in which to respond to a motion for summary judgment.  Plaintiff  filed a response to the  special report filed by Defendants.  This case is now pending on Defendants' motion for summary judgment.  Upon consideration of the motion, Plaintiff's opposition to the motion, and the supporting and opposing evidentiary materials,  the court concludes that Defendants' motion for summary judgment  on Plaintiff's  excessive force claim is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word – genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive Defendants' properly supported motion for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment....").

Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier

of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II. DISCUSSION

*A. Injunctive/Declaratory Relief*

6

Plaintiff is no longer incarcerated at the Houston County Jail. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at the county jail, any request for injunctive and/or declaratory relief has been rendered moot.

*B. Lack of Service on Defendant Fitzgerald*

On April 23, 2008 the court entered an order of procedure directing service of the complaint on Defendant Fitzgerald and further directing that he file an answer and written report to Plaintiff's complaint. Service was attempted on Officer Fitzgerald but has not been perfected because he was unknown at the address provided by Plaintiff. According to the docket, the envelope containing Officer Fitzgerald's copy of the complaint and the court's order of procedure was returned to the court marked "Return to Sender; Attempted; Not Known; Unable to Forward."

If a person has not been served, he is not a party to this lawsuit except in very unusual circumstances. During the proceedings in this case, the court repeatedly advised Plaintiff that it is his responsibility to provide the court with the defendants' correct name and address for service, informed him that he must monitor the case to ensure that all defendants he named

had been served, and cautioned him that the failure to perfect service on a defendant would result in the named person not being considered a party to this case. (*See Doc. Nos. 5, 7.*) Plaintiff filed no response to the order that he provide a correct service address for Defendant Fitzgerald.

The Federal Rules of Civil Procedure require that service must be made upon a defendant within 120 days after filing the complaint. Rule 4(m), *Federal Rules of Civil Procedure*. If a defendant is not served within this time limit "the court -  on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id*.

The time allowed for effecting service of the complaint on Correctional Officer Fitzgerald expired in August of 2008. The undersigned finds that there is nothing before this court which warrants an order granting any further extension of the time for service. *See generally Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129 (11th Cir. 2005). Consequently, Plaintiff's claims against Officer Fitzgerald are subject to dismissal without prejudice as service has not been perfected on this individual in accordance with applicable procedural rules.

*C. Excessive Force Claim*[3]

---

[3]It is unclear from the pleadings before the court whether, at the time the actions about which Plaintiff complains occurred, he was incarcerated at the Houston County Jail as a pretrial detainee or convicted prisoner. The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon a pretrial detainee are violative of the Constitution. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the

Plaintiff alleges that Defendants subjected him to excessive force on February 20, 2008. According to the complaint, Officer Chancey subjected Plaintiff's cell to a shakedown. Plaintiff complied with the guard's order that he get off his bed during the shakedown. He states that during the shakedown he had his back to the cell door with his hands in the air when Officer Leary proceeded to tase him in the back. After being tased, Plaintiff was handcuffed and placed on a stool. Because his body was shaking from having been tased, Plaintiff contends that he kept sliding off the stool so Sgt. Buchmann stood between his legs to hold him up. Plaintiff's body continued to shake and he urinated on himself.[4] (*Doc. No.*

_____

Fourteenth Amendment's Due Process Clause...."). For analytical purposes, however, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11ᵗʰ Cir. 1985); *Cottrell*, 85 F3d at 1490 ("[T]he applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."). Thus, this court's reliance on cases interpreting the Eighth Amendment's prohibition against cruel and unusual punishment when addressing Plaintiff's excessive force and medical treatment claims is appropriate regardless of his status at the Houston County Jail at the time the incident about which he complains occurred. *See Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11ᵗʰ Cir. 1994) (observing "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

[4]In his opposition, Plaintiff claims for the first time that Sgt. Buchmann failed to protect him from the use of force, that the defendants were not adequately trained in the use of a taser, and that the jail has no written policies and procedures regulating the use of force. (*Doc. No. 21*.) This matter, however, is before the court on the allegations presented in Plaintiff's complaint as described herein, and thus, Plaintiff's presentation of new claims for relief or factual allegations and/or additional theories of liability in his opposition to Defendants' dispositive motion are not properly before the court, nor did the court consider Plaintiff's opposition as an amendment to his complaint. *See Chavis v. Clayton County Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11ᵗʰ Cir. 2002) ("Chavis advanced this contention in his brief to the district court in response to the defendants' motion for summary judgment. Chavis did not seek to amend his complaint to add a claim based on the asserted conduct, and the district court did not specifically address this contention . . . We do not regard this kind of claim as properly before us . . ."); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7ᵗʰ Cir. 1996) (cited with approval in *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11ᵗʰ Cir. 2004) ("As a final matter, Shanahan's attempt to amend his complaint by way of a footnote in his response to defendants' motion for summary judgment was properly denied by the district court. A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

*1 at pg. 3*.)

Defendants' evidence, largely undisputed, reflects that during the evening of February 20, 2008, Officers Chancey and Kirksey were conducting routine cell shake downs in Cell 9 I-Pod.  The officers seized a green mattress from both Plaintiff and his cellmate.  Officer Chancey informed Plaintiff that he would have to verify whether Plaintiff was medically approved to have two mattresses.  Upon contacting medical to verify the status of Plaintiff's mattress, Officer Chancey was informed that Plaintiff was not on the list as being approved for two mattresses but that his chart would be checked in order to verify his status.  In the interim, Officer Chancey continued with his duties, including distribution and collection of meal trays.  (*Doc. No. 17, Chancey Affidavit.*)

At approximately 7:15 p.m., Officer Chancey, along with Officer Hartley, went to I-Pod to pass out inmate mail and return mattresses to inmates Corey Green and Travis Poke. Plaintiff proceeded to take inmate Poke's mattress, carry it up the stairs to the cell he shared with inmate Poke, and placed the mattress on his bunk.  Despite Officer Chancey informing Plaintiff that the mattress was not his, Plaintiff commented that it was because he had a medical profile for two mattresses.  Officer Chancey informed Plaintiff that he had not had that information verified by medical to which Plaintiff responded he had such proof. Plaintiff then retrieved a grievance from his cell which was directed to medical containing a request by Plaintiff for two mattresses, but as Officer Chancey pointed out, the grievance did not show that Plaintiff had been approved for the second mattress. In response, Plaintiff,

10

in an angry and belligerent manner, stated to Officer Chancey, "O.K., just get the f- -k out of my face then." Officer Chancey advised Sgt. Buchmann of this incident with Plaintiff. She directed Officer Chancey to put Plaintiff on lock down and  issue him a disciplinary for directing  profanity and/or derogatory remarks to an officer and for failing to comply with verbal instructions.  (*Doc. No. 17, Chancey Affidavit, Buchmann Affidavit*.)

Officer Chancey returned to I-Pod around 7:45, along with Officers Leary and Hartley,  to inventory Plaintiff's property and remove property he was not allowed to have while on lock down.   Defendants state that during the inventory process, Plaintiff acted argumentatively, belligerently, and failed to be compliant with their efforts to inventory his property. Defendants ordered Plaintiff to sit at the table in his cell so that they could inventory his property  and remove those items he could not have on lock down.   Plaintiff continued to be loud, disrespectful and non-compliant with the jailers' efforts as he  paced back and  forth in the cell, swinging his arms, and yelling "I ain't got to f- - -ing sit down." Defendants again  ordered Plaintiff to  sit at the table, but he continued yelling at and arguing with the jailers as he  moved around his cell swinging his arms.  Plaintiff refused the third directive by Defendants that he sit down. Instead, he moved towards them in a combative manner.   In response to Plaintiff's actions, Officer Leary deployed his taser  as Plaintiff stated "shoot me" and turned his back to the guard.   Plaintiff fell to the floor on his bottom as a result of being tased.  At the end of the taser cycle[5] Officer Leary ordered Plaintiff to roll

---

[5]Each cycle consists of a five second pre-programmed discharge of electrical current. (*Doc No. 17, Leary Affidavit*.)

onto his stomach. Plaintiff eventually complied. He did not, however, comply with Officer

Leary's orders to put his hands behind his back and continued to argue with the guards. Due

to Plaintiff's ongoing refusal to put his hands behind his back, Officer Leary tased Plaintiff

a second time. At the end of the second cycle, Plaintiff placed his hands behind his back and

Officer Chancey handcuffed him. Because he indicated that he could not move, Officers

Leary and Chancey state that they placed Plaintiff on his bunk where he sat upright under his

own power. (*Doc. No. 17, Leary Affidavit, Chancey Affidavit.*)

  As a result of the incident with Plaintiff, an "all officer" call went out to control the

situation in I-pod. When Sgt. Buchmann arrived at Plaintiff's cell she observed him sitting

on a stool. Sgt. Buchmann, believing Plaintiff to be sliding off his stool intentionally, stepped

between his legs and held the lapels of his jumpsuit to prevent him from sliding off the stool

and faking an injury. While holding up Plaintiff by his jumpsuit, Sgt. Buchmann states that

he urinated on her leg. (*Doc. No. 17, Buchmann Affidavit.*)

  Following restoration of order on the Pod, Officer Chancey, who is a licensed and

certified Emergency Medical Technician ["EMT"], returned to Plaintiff's cell to re-examine

where the taser probes hit Plaintiff and determine whether treatment was necessary. At that

time, Officer Chancey asserts that Plaintiff remained in an agitated state, but he did not

exhibit any signs of physical injury or impairment. (*Doc. No. 17, Chancey Affidavit.*)

  Plaintiff maintains that the decision to tase him constituted an unnecessary and

excessive use of force because at the time he was tased he "did not resist, or threaten the

officer(s) in any fashion or br[a]ke any jail rules." He claims that the amount of force used by Defendants "was completely out of proportion to that need," and that they maliciously and sadistically used force to cause him harm. (*Doc. No. 21*.)

The Eighth Amendment's prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v Albers*, 475 U.S. 312, 319 (1986). The Supreme Court held in *Hudson v. McMillian*, 503 U.S. 1 (191992), that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*: whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 6-7. Thus, summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, have been placed in jeopardy. *Whitley*, 475 U.S. at 312 (riot and hostage situation). In extending *Whitley* to all cases involving allegations of force, the *Hudson* Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

503 U.S. at 6 (citations omitted).With these concerns in mind, the *Hudson* Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary.  They include: 1) the extent of the injury suffered by the inmate; 2) the need for the application of force; 3) the relationship between the need and the amount of force used; 4) the threat reasonably perceived by the prison official; 5) any efforts made to temper the severity of a forceful response.  503 U.S. at 7-8.  "From consideration of such factors, 'inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'  *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973))."   *Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002). Further, the *Hudson* Court made it clear that the extent of the injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."  503 U.S. at 7. The  Supreme Court recently clarified that the core judicial inquiry is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm' "  *Wilkins v. Gaddy*, ___ U.S. ___, ___, 130 S.Ct. 1175, 1178 (2010) (quoting *Hudson*, 503 U.S. at 7). The *Wilkins* Court further explained that "injury and force ... are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does

not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id* at 1178-79.

The undisputed evidence before the court reflects that during Defendants' efforts to prepare Plaintiff for his move to lock down, he refused numerous direct orders by Officers Chancey and Leary to sit at the table in his cell while they inventoried his property, he was verbally hostile and loud, and combative in his demeanor. At that point, the situation was such that it became necessary for correctional officers to exert more authority than could be exercised by mere verbal orders and commands which, as had been demonstrated up to that point, had little to no influence or effect on Plaintiff. Officer Leary proceeded to tase Plaintiff after he refused repeated orders to sit down and at a point where his conduct and actions had become even more aggressive and belligerent. After the initial tasing, Plaintiff continued to be non-compliant with Defendants commands by refusing to put his hands behind his back so that he could be handcuffed. As a result, Officer Leary deployed the taser on Plaintiff a second time. The second deployment of the taser achieved the guards' intended goal of being able to handcuff Plaintiff and bring him under control without further incident.

In evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and unruly environment. *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987). "[I]f force was applied in a good faith effort to maintain discipline, courts should give great deference to acts taken by prison officials in applying prophylactic or preventative measures intended 'to reduce the

incidence of riots and other breaches of prison discipline.' " *McBride v. Rivers*, 170 Fed.Appx. 648, 656 (11th Cir. 2006) (unpublished) (quoting *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991));[6] *see Rhodes v. Chapman*, 452 U.S. 337, 351 (1981) (in considering whether the Eighth Amendment has been violated, courts must be mindful that such inquiries "spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility."). While this deference "does not insulate from review actions taken in bad faith or for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Ort*, 813 F.2d at 322 (quoting *Whitley*, 475 U.S. at 322). Where the only question concerns the reasonableness of the force used by a prison official, the defendant will ordinarily be entitled to judgment as a matter of law. *See Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (explaining that "force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary. . . '[T]he core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' ") (citations omitted); *McBride*, 170 Fed.Appx. at 657 (although correctional officers could arguably have used less force after subduing inmate, inmate "failed to produce evidence showing that these measures were taken 'maliciously and sadistically for the very purpose of causing harm.'") (citations omitted).

---

[6]Pursuant to Eleventh Circuit Rules 36-2, 36-3, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

It is the opinion of the court based on the undisputed evidence in the record, that Defendants Leary and Chancey  acted "in a good-faith effort to maintain or restore discipline," and not "maliciously or sadistically to cause harm."  *See Hudson*, 503 U.S. at 7. In reaching this conclusion the court finds that: 1) Defendant Leary's use of the taser was in direct response to Plaintiff's conduct which clearly constituted an immediate threat to institutional safety and security; 2) Plaintiff posed an immediate direct physical threat to jail personnel, to himself, and to the security of the Pod; 3) the evidence fails to demonstrate that Defendant Leary's use of the taser had as its objective an intent to punish rather than the legitimate government objective of restoring order and control; 4)  Plaintiff received numerous verbal requests to  sit still in his cell while his property was inventoried  which he ignored while continuing to be verbally hostile and aggressive in his demeanor; and 5) the amount of force used was  limited to no more  than necessary to regain control of the situation.

While Plaintiff contends that he repeatedly asked to go to the hospital after being tased, he provides no specific description of any injuries other than asserting that his back hurt and he was shaking.  (*Doc. No. 1.*)  Additionally, the undisputed evidence before the court reflects that  Officer Chancey, an EMT on duty the evening the incident occurred, examined where the taser probes hit Plaintiff and checked to ensure that he did not suffer any severe wounds or require any further medical treatment. Officer Chancey did not observe Plaintiff exhibiting any signs or symptoms of injury at the time he examined Plaintiff.

Plaintiff submitted a sick call request on February 21, 2008 for a chief complaint of "back problems." During examination he indicated to medical personnel both that he had been tased in his back and had a bullet in his back. Medical personnel noted right sided tenderness to the lower back and the presence of a scar consistent with a bullet wound and that pain was worse with motion. Plaintiff was prescribed pain medication and directed to return for a follow up in three weeks. Plaintiff refused medical treatment at the follow up visit. There is no indication that Plaintiff either requested or required any further medical treatment as a result of the February 20, 2008 incident. (*Doc. No. 17, Smoak Affidavit - Exh. A to Smoak Affidavit.*) *See Birdine v. Gray,* 375 F. Supp.2d 874, 880 (D. Neb. 2005)(granting summary judgment on pretrial detainee's claim of excessive force, based upon use of stun guns, in part because plaintiff did not suffer "any significant injury"); *Daniels v. Reams,* 2008 WL 2783462 at *3 (W.D.Ark., July 17, 2008) (granting summary judgment on pretrial detainee's claim of excessive force, where plaintiff's medical records did not support his contention "that he sustained more than minimal injury in the incident").

The court finds from the evidence that Plaintiff received several orders from jail personnel to sit still and comply with their efforts to inventory his personal property. Plaintiff failed to comply with these orders while simultaneously being verbally loud and abusive, and displaying aggressive body language. Because Plaintiff refused numerous direct orders by jail personnel to calm himself and sit still while they carried our their duties and proceeded to engage in conduct which could reasonably be perceived by Defendants as

placing themselves as well as other correctional officers and inmates in a dangerous and threatening situation, such sufficed under the circumstances of this case to establish the need to take swift and decisive action by deploying the taser. *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984) ("When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger."). The decision to deploy the taser on Plaintiff does not appear to the court to have been excessive under the circumstances. *See Jasper v. Thalacker,* 999 F.2d 353, 354 (8th Cir. 1993) (prison guard's use of a stun gun in the face of a threat to another guard did not violate the Eighth Amendment even though the guards could have subdued the inmate without the device). Inasmuch as the evidence fails to establish that Defendants used any force in excess of that which was necessary to restore control over Plaintiff, the court finds that Defendants are entitled to summary judgment on his claim of excessive force. *See Whitley*, 475 U.S. at 321.[7]

*D. The Medical Claim*

Plaintiff complains that he repeatedly asked to go to the hospital after he was tased because his back hurt and he could not stop shaking. He further asserts that he submitted a sick call request on February 21, 2008 to see the doctor but was not called until February 28,

---

[7] Because of Plaintiff's size (6'2", 220 lbs., muscular build), Defendants Leary and Chancey maintain that undertaking physical efforts to subdue and handcuff him would likely have escalated an already dangerous situation into a physical struggle and any use of force other than a taser would probably have resulted in serious injury to not only Plaintiff but the correctional officers involved in attempting to physically subdue and handcuff him. (*Doc. No. 17, Chancey Affidavit, Leary Affidavit.*)

2008.  (*Doc. No. 1.*)

As noted, in the context of a claim implicating a denial of medical care for a pretrial detainee, this Circuit has treated the Eighth and Fourteenth Amendment protections as co-extensive.  *Hamm v. DeKalb County*, 774  F.2d 1567, 1574 (11th Cir. 1985); *Belcher v. City of Foley, Ala.,* 30 F.3d 1390, 1396 (11th  Cir.1994).  Thus, whether a pretrial detainee at the time of the incident or a convicted prisoner, in order for Plaintiff to prevail on his allegation that Defendants failed to provide adequate medical treatment, he must show that they acted with deliberate indifference to his serious medical condition.  *See Thornton v. City of Montgomery*, 78 F. Supp. 1218, 1225 (M.D. Ala. 1999), *aff'd*, 228 F.3d 414, 415 (11th Cir. 2000 ( table)).

"Deliberate indifference" requires that the official know of and disregard an excessive risk to inmate health or safety.  *Farmer v. Brennan*, 511 U.S. at 837. The official "must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* (emphasis added).  Deliberate indifference suggests a state of mind more blameworthy than negligence.  *Id.* at 835.  A "serious medical condition" is an objectively serious medical need, that if left unattended, poses a serious risk of serious harm.  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal citations omitted).

In *Farmer*, the Court noted that "deliberate indifference l[ies] somewhere between the poles of negligence at one end and purpose or knowledge at the other . . ."  *Id.* 511 U.S. at

836.   Deliberate indifference may be demonstrated by either actual intent or reckless disregard. ” *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).   Reckless disregard occurs when a defendant "knows of and disregards an excessive  risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at  837.   Under this standard, a prison or medical official does not act with indifference by providing medical care that is different from that which an inmate desires. *See Hamm*, 774 F.2d at 1575. Further, a showing of negligence, neglect, or medical malpractice is insufficient to establish a constitutional violation.  *Rogers*, 792 F.2d at 1058; *see also Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

A claim about a failure to provide immediate or emergency medical attention must involve medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176 (11th Cir. 1994). In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation. *Id.*

> The "seriousness" of an inmate's medical needs also may be
> decided by reference to the effect of delay in treatment.... Where
> the delay results in an inmate's suffering "a life-long handicap
> or permanent loss, the medical need is considered serious." ...
> An inmate who complains that delay in medical treatment rose
> to a constitutional violation must place verifying medical
> evidence in the record to establish the detrimental effect of delay
> in medical treatment to succeed. Further, we have held that "the

tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir.1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Id*. at 1188-89.

Plaintiff complains that Defendants denied him medical treatment after he was tased despite his repeated requests to go to the hospital. He does not dispute, however, that he was re-examined by Defendant Chancey, a licensed EMT, approximately 15 to 20 minutes after he was tased and that the guard observed Plaintiff walking around in his cell without any signs or symptoms of physical injury or impairment. (*Doc. No. 17, Chancey Affidavit; see also Buchmann Affidavit*.) Plaintiff submitted a sick call slip on February 21, 2008 for his complaint of back pain from being tased and having a bullet lodged in his back. Upon examination, medical personnel prescribed Plaintiff pain medication, a muscle relaxer, and an extra matt. Plaintiff's medical records fail to reflect that he requested or required any further treatment in connection with the tasing incident. (*Doc. No. 17, Smoak Affidavit, Exh. A to Smoak Affidavit*.)

The undisputed evidence before the court reflects that Plaintiff received responsive and appropriate medical attention after being tased. No evidence exists tending to show that Defendants demonstrated deliberate indifference towards Plaintiff's medical needs by

intentionally or deliberately delaying or withholding necessary medical treatment, or by interfering with his ability to access such treatment.  The court, therefore, concludes that Plaintiff fails to present evidence demonstrating that Defendants  in any way disregarded a substantial risk to his health by purposely delaying or denying him adequate medical treatment.[8]  The court, therefore, concludes that Defendants' motion for summary judgment on Plaintiff's medical treatment claim is due to be granted.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Plaintiff's claims for injunctive and/or declaratory relief be DISMISSED as moot;

2.  Defendant Fitzgerald be DISMISSED without prejudice for failure to effect service on this individual in accordance with applicable procedural rules;

3. Defendants Chancey's, Leary's, and Buchmann's motion for summary judgment (*Doc. No. 17*)  be GRANTED;

4. Judgment be ENTERED in favor of Defendants Chancey, Leary, and Buchmann and against Plaintiff; and

5. Costs be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that on or before **February 8, 2011** the parties may file objections to the

---

[8]Plaintiff's complaint regarding a week's delay in being examined/treated by a doctor at the jail infirmary following the tasing incident is not properly brought against the named defendants as there is no indication that they had any responsibility or involvement in the scheduling of inmate medical appointments.

Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 26th day of January 2011.

  /s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

24